UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MICHELE SANTANGELO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:13CV294-PPS |
| | ) | |
| WILLIAM D. CANTRELL, JR., | ) | |
| INTERVEST CAPITAL | ) | |
| MANAGEMENT, LLC, and | ) | |
| DRAGON FUND, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michele Santangelo has filed her Second Motion for Default Judgment against Defendant William D. Cantrell, Jr. Because Cantrell has failed to defend against Santangelo's amended and supplemental pleadings despite effective service of process, the Second Motion for Default Judgment is **GRANTED,** and Santangelo is awarded default judgment in the total amount of $2,695,951.35.

## BACKGROUND

Determination of the default judgment motion warrants a detailed review of the proceedings to-date. On August 26, 2013, Santangelo filed a complaint alleging misappropriations of her money by defendants Cantrell, Intervest Capital Management, LLC, and Dragon Fund, L.P. [DE 1.] This complaint was served on all three defendants on September 5, 2013 at 3903 Goodrich Court in Valparaiso, Indiana, [DE 22, 23, 24], and an amended complaint was similarly served on September 20, 2013 [DE 30]. The Goodrich Court address is Cantrell's home, and also his address as the registered agent of Intervest and the Dragon Fund.

On September 18, 2013, Cantrell filed a copy of Santangelo's original complaint with his handwritten responses that the court construed as his answer, [DE 16], and a letter requesting that the court deny a motion by Santangelo for a temporary restraining order. [DE 17.] Cantrell did not answer the amended complaint. On September 19, Cantrell attended a motion hearing and indicated he would retain counsel. [DE 19.] On September 27, he moved to reschedule an October 2 preliminary injunction hearing so he would have more time to retain counsel. [DE 27.] The hearing was reset for October 17, [*id.*], but Cantrell failed to appear. [DE 28.]

On December 2, 2013, the court received a letter from Cantrell that was stricken as "impertinent and scandalous" and procedurally defective. [DE 33.] Another letter from Cantrell was received on January 15, 2014 that requested procedural guidance and indicated he was seeking counsel for Intervest. [DE 37.] On January 28, Cantrell filed a Rule 26(f) proposed discovery plan. [DE 38.]

On January 31, 2014, Cantrell moved for a two-week continuance of a February 6 pretrial conference, citing a personal matter. [DE 40.] The court reset the conference for March 6, 2014, [*id.*], but again Cantrell failed to appear. [DE 44.] Finally, on March 13, 2014 Cantrell filed a letter opposing Santangelo's filing of a supplemental complaint. [DE 43.] That letter more than a year ago was Cantrell's last action in this case.

Shortly thereafter, matters took a surprising turn when Cantrell was arrested outside Santangelo's residence in California on March 19, 2014, in possession of a drywall saw and a crowbar. Cantrell was then charged in this court with mail fraud and interstate stalking. [ECF 2:14CR40-JVB, DE 21.] On May 18, 2015, Cantrell entered a plea of guilty to the mail fraud count charging that Cantrell defrauded Santangelo of the money he induced her to invest in the

2

Dragon Fund. [*Id.* at DE 47.] Cantrell remains incarcerated at Porter County Jail, [*id.* at DE 20], and has taken no further action in this civil case since he filed the letter in March 2014.

Santangelo previously moved for the entry of default and for default judgment against all three defendants. [DE 55-60.] I granted the entry of default against Intervest and the Dragon Fund on February 6, but denied the entry of default against Cantrell. [DE 61.] My concerns at that time included that Santangelo, in arguing for a default, had not effectively addressed the entire course of Cantrell's participation in the litigation, that the supplemental complaint adding two new claims had not been properly served on Cantrell, and that it was unclear whether Santangelo's service of her default judgment motion on the Hammond U.S. Marshal's Office and Porter County Jail would be forwarded to Cantrell. [*Id.*]

On April 16, 2015, Santangelo filed her voluntary dismissal of the supplemental claims [DE 68], and filed a Second Motion for Default Judgment against Cantrell [DE 66, 67]. The motion was served via U.S. mail at the Goodrich address and at the Porter County Jail where Cantrell is incarcerated. [DE 67 at 19.]

## DISCUSSION

**A. Cantrell is in Default**

Default entry is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a). Courts are to exercise sound judicial discretion when ruling on default entry and default judgment. *E.g.*, *Wolf Lake Terminals v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). If the clerk has not already done so, a court may order the clerk to enter a default when ruling on a motion for default judgment. *Id.*

Courts may consider several factors in ruling on default judgment including "the amount of money potentially involved, whether material issues of fact or issues of substantial public importance are at issue, whether the default is largely technical, whether plaintiff has been substantially prejudiced by the delay involved, and whether the grounds for default are clearly established or are in doubt." *Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Pro. Civ. § 2685 (3d ed. 2007).

Santangelo now clearly establishes uncontested grounds for default by reference to Cantrell's "token" participation followed by a failure to defend the suit for over one year. The resulting delays sufficiently prejudice Santangelo by hindering recovery of her money. Although Cantrell's "answer" to the original complaint generally denied Santangelo's allegations and would ordinarily give rise to issues of material fact, this is outweighed by his failure subsequently to participate in the litigation as detailed above. Besides Cantrell's ultimate failure to defend this civil suit, any issues of material fact are laid to rest by Cantrell's plea of guilty to the criminal mail fraud charge arising out of the same dealings with Santangelo, and by FBI Special Agent Eric Field's affidavit submitted by Santangelo, detailing a March 21, 2014 conversation between Fields and Cantrell where Cantrell admits to the fundamental allegations in Santangelo's complaint. [DE 67-2 at 10.]

Cantrell raises no argument that the requested damages are unreasonable. While the amount sought is substantial, it falls short of unprecedented and in comparable circumstances the Seventh Circuit has expressed difficulty in understanding why a defendant would allow a default to occur when a large monetary amount is at issue. *See C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1208 (7th Cir. 1984) (upholding a 1982 district court's default

4

judgment of $600,000 and conclusion that appellants simply lacked regard for court rules and procedure).

A public interest exists in allowing *pro se* litigants to benefit from a heightened degree of leniency. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). However, *pro se* litigants are "not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Id.* Cantrell's *pro se* status therefore does not shield him from default because he has generally failed to comply with the rules, procedures, and deadlines of this court despite its prior leniency in accepting procedurally defective filings and granting him extensions to obtain counsel and for a personal matter.

Although technical failures may not constitute a default where the defendant has taken action to participate in the lawsuit, *e.g.*, *Wolf Lake Terminal* 433 F. Supp. 2d at 942*, willful* delays offset "technicalities" and exist when a defendant has "chosen not to conduct [ ] litigation with the degree of diligence and expediency prescribed by the trial court." *See Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003) (holding defendants technical failures were accompanied with apparent unwillingness to abide by the court's requirements as evidenced by late and informal responses and failures to appear); *C.K.S. Eng'rs*, 726 F.2d at 1206 (holding default judgment may be affirmed where defaulting party was or should have been aware of responsibilities to opposing party and failed to live up to them by unexcused carelessness or negligence); *see also Hal Commodity Cycles Mgmt. Co. v. Kirsch*, 825 F.2d 1136, 1136-37 (7th Cir. 1987) (affirming default judgment because defendant disregarded deadlines, did not attend conferences, and did not cooperate with multiple defense attorneys who withdrew).

Although I previously declined to enter default against Cantrell and noted his prior efforts to participate, Santangelo's uncontested Second Motion for Default Judgment provides a

more detailed analysis of Cantrell's participation. Indeed, Cantrell has shown minimal diligence and has ultimately abandoned the defense of Santangelo's claims. He failed to appear at two hearings that were extended at his request. His only in-person appearance was at a September 19, 2013 hearing where he asserted he was seeking counsel. His earlier handful of *pro se* motions and informal correspondence with the court do not mitigate his inactivity in the suit for over one year.

Cantrell presents no excuse for his failure to defend despite being served with Santangelo's Second Motion for Default Judgment at both his home address of record and at the Porter County Jail where he is incarcerated**.** For all these reasons, I find Cantrell to be in default.

**B. Cantrell is Liable to Santangelo on Counts II through VI.**

I next turn to the matter of Cantrell's liability for default judgment. All well-pled allegations in the complaint are presumed true when ruling on default judgment. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). If the complaint supports the requisite elements for liability on a claim, a plaintiff is entitled to relief on that claim. *See In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004) ("Once the default is established . . . the plaintiff must still establish the entitlement to the relief he seeks."). Santangelo's motion for default judgment invokes the legal theories of Counts II through VI. [DE 67 at 12-14.]

Santangelo's pleadings make the following allegations that are deemed admitted by Cantrell's default. Cantrell operated the Dragon Fun as a private hedge fund from his Goodrich Court address in Valparaiso, Indiana. On multiple occasions, Cantrell solicited and persuaded Santangelo to invest substantial sums of money in securities through the Dragon Fund, ostensibly depositing the funds in a "trust account" and an "IRA account." Cantrell created and mailed to Santangelo quarterly statements purporting to reflect steady gains on Santangelo's

investments with the Dragon Fund.  The statements were false and did not accurately represent actual balances in Santangelo's accounts with the Dragon Fund.  Rather than enjoying increases on funds actually invested in securities, Santangelo's money was misappropriated by Cantrell, who ultimately admitted to Santangelo that the money was all gone.  Cantrell misappropriated Santangelo's assets to pay his personal expenses and finance a lavish lifestyle.  Taken together, these facts satisfy the elements entitling Santangelo to relief on counts II through VI.

In addition to the now-admitted allegations of Santangelo's pleadings, she has submitted her affidavit affirming that she entrusted Cantrell with money. [DE 67-1.] Furthermore, Santangelo submits FBI Special Agent Eric Field's affidavit (filed in support of the criminal complaint against Cantrell) that details a March 21, 2014 conversation between Fields and Cantrell in which Cantrell admitted that he had improperly transferred to his own account the money Santangelo and others invested in the Dragon Fund and that the quarterly statements provided to his investors were false. [DE 67-2 at 10.]  The affidavit supports a determination that Santangelo's money was indeed misappropriated.

Count II alleges Cantrell's violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5.  [DE 46 at 24-25.]  The facts alleged, sworn and admitted demonstrate that Cantrell employed a scheme to defraud, made untrue material statements and material omissions, and engaged in fraudulent or deceitful acts in connection with the sale of securities. *See* 17 C.F.R. § 240.10b–5 (2015).  Count III is a claim for  breach of fiduciary duty. The facts also establish the elements of that claim, in that Cantrell acted as an investment advisor who breached his fiduciary duty to Santangelo by his false and fraudulent representations and his misappropriation of her investments. [DE 46 at 26-27.]

Count IV alleges fraud under Indiana law. The record supports that Cantrell materially misrepresented facts with knowledge or reckless ignorance of their falsity and that Santangelo detrimentally relied on the misrepresentations. [DE 46 at 27-29.] *See American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690 (Ind. Ct. App. 2004). Count V alleges theft under Indiana Code § 35-43-4-2, which is established in that while Cantrell resided in Valparaiso, Indiana, he knowingly and intentionally exerted unauthorized control over Santangelo's money and caused the entire loss of her investment. *See* Ind. Code § 35-43-4-2 (West 2015). [DE 46 at 29-30.] Finally, Count VI alleges deception under Indiana Code § 35-43-5-3. The admitted allegations of Santangelo's complaint meet that claim in that while Cantrell resided in Valparaiso, Indiana, he knowingly and intentionally misapplied entrusted property in a knowingly unlawful manner. *See* Ind. Code § 35-43-5-3 (West 2015). [DE 46 at 30-31.] I am satisfied that Santangelo is entitled to default judgment on each of Counts II through VI of her amended complaint. Santangelo has not moved for default judgment against Intervest and Dragon Fund, against whom default was entered on February 9, 2015 [DE 62.].

**C. Santangelo Demonstrates Her Damages**

A hearing to determine damages after default judgment is unnecessary where damages can be ascertained from documentary evidence or detailed affidavits in the record. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). A court must ascertain damages to a "reasonable certainty," *In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004) (internal citation omitted), and the relief must not exceed what is demanded in the pleadings. Fed. R. Civ. P. 54(c).

Santangelo's pleading alleges that she made four separate buys into the Dragon Fund. Her initial investment of $316,074.20 occurred on December 14, 2010. [DE 46 at ¶42] Next, Santangelo added $431,141.82 on January 5, 2011 [*Id*. at ¶46.][1] On February 10, 2011, Santangelo invested another $65,860 by a transfer from her account with Fidelity. [*Id.* at ¶59, 60.][2] Lastly, on August 20, 2012, Santangelo wired $40,000 from a Scottrade account into Cantrell's management of the Dragon Fund. [*Id.* at 75.][3] The sum of these four figures is $853,076.02. Santangelo has never received any withdrawals, dividends or other payouts of her investments with Cantrell and the Dragon Fund. [DE 67-2 at ¶11.] Her entire investment has been lost. [*Id.* at ¶12, 13.] Her compensatory damages are therefore $853,076.02.

Santangelo seeks treble damages pursuant to Indiana Code § 34-24-3-1, a portion of the Indiana Crime Victim's Relief Act which authorizes enhanced damages in a civil action for a defendant's violation of Indiana's theft statute. *Old National Bank v. Kelly*, No. 82A01-1406-CT-234, 2015 WL 1851454, at *7 (Ind.App. Apr. 23, 2015). The statute provides that a person who "suffers a pecuniary loss as a result of a violation of IC 35-43...may bring a civil action against the person who caused the loss" and recover three times her actual damages, the costs of the action, a reasonable attorney's fee and other expenses. Ind. Code § 34-24-3-1. Because

---

[1] This amount appears to represent the lion's share of Santangelo's withdrawal of $431,304.34 from an IRA account with Fidelity Investments. [*Id*. at ¶48; DE 15-2 at 59.] The Dragon Fund documents reflect the investment of the slightly lesser amount of $431,141.82 [DE 15-2 at 36, 39] rather than the entire $431,304.34 withdrawn from Fidelity, a difference of $162.52. There is some confusion in Santangelo's filings as between these two figures, impacting the math as to her total inputs to the Dragon Fund. To avoid even a relatively small unjustified inflation of Santangelo's damages, I will use the smaller figure as shown on the Dragon Fund documentation.

[2] This amount is sometimes (but not always) omitted from Santangelo's sums as to her investment losses with the Dragon Fund.

[3] All these factual allegations were sworn by Santangelo in her verified amended complaint. [DE 15-1.]

Santangelo's pleadings establish Cantrell's liability for theft, I will award an additional $1,706,152.04 in treble damages, along with costs and attorney's fees. Santangelo's reasonable attorney's fees and expenses in the amount of $52,210.33 are well-supported by counsel's affidavit, detailing counsel's efforts and costs from July 2013 to present. [DE 67-3.]

Santangelo requests $112,393.72 in prejudgment interest at a rate of 8% per year from August 23, 2013 to April 16, 2015 (the date of her motion). Her claim that she could have received gains if her money had been properly invested is a recognized basis for awarding prejudgment interest. *E.g.*, *Myron v. Chicoine*, 678 F.2d 727, 733 (7th Cir. 1982) ("an award of prejudgment interest is particularly appropriate in cases involving investment fraud"). Courts sitting in diversity jurisdiction generally apply state law for prejudgment interest. *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 106 F.3d 1388, 1405 (7th Cir. 1997); *Chicago Prime Packers, Inc. v. Northam Food Trading Co.*, 320 F.Supp. 2d 702, 716 (E.D. Ill. 2004), *aff'd*, 408 F.3d 894 (7th Cir. 2005). Under Santangelo's circumstances, Indiana statute calls for prejudgment interest on her tort claims to begin accruing six months after her claim was filed, or February 23, 2014. *See* Ind. Code 34-51-4-8 (West 2015). The requested 8% rate falls within the permissible statutory range of interest rates. Ind. Code 34-51-4-9 (West 2015). Prejudgment interest at an annual rate of 8% computed on Santangelo's compensatory damages from February 23, 2014 to date amounts to $84,512.96, which will be included in the judgment.

## **CONCLUSION**

Plaintiff Michele Santangelo's Second Motion for Default Judgment Against Defendant William D. Cantrell, Jr. [DE 66] is **GRANTED**. The Clerk shall enter default against Cantrell,

and shall also enter default judgment against Cantrell on Counts II through VI of the amended complaint in the total amount of $2,695,951.35, consisting of $853,076.02 in compensatory damages, $1,706,152.04 in treble damages, $52,210.33 in attorney's fees and expenses, and $84,512.96 in prejudgment interest.

**SO ORDERED**.

ENTERED: May 21, 2015

                                                          /s/Philip P. Simon
                                                     PHILIP P. SIMON, CHIEF JUDGE
                                                     UNITED STATES DISTRICT COURT